# EXHIBIT A

**COPY**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 22 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

1  DANIEL M. PETROCELLI (S.B. #97802)
   dpetrocelli@omm.com
2  JAMES PEARL (S.B. #198481)
   jpearl@omm.com
3  JOSEPH SCOTT MANSON (S.B. #254865)
   O'MELVENY & MYERS LLP
4  1999 Avenue of the Stars, 7th Floor
   Los Angeles, CA  90067-6035
5  Telephone: (310) 553-6700
   Facsimile:  (310) 246-6779
6
7  Attorneys for Plaintiffs Wimbledon Financing
   Master Fund, Ltd and Stillwater Market Neutral
8  Fund III SPC

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  COUNTY OF LOS ANGELES

11                    CENTRAL DISTRICT

12  WIMBLEDON FINANCING MASTER
    FUND, LTD., a Cayman Islands company;          Case No.  BC 466001
13  STILLWATER MARKET NEUTRAL
    FUND III SPC, a Cayman Islands                 Case No.
14  company,
                                                   COMPLAINT FOR:
15              Plaintiffs,
                                                   (I)    BREACH OF FIDUCIARY DUTY;
16        v.
                                                   (II)   AIDING AND ABETTING BREACH
17  DAVID MOLNER, an individual;                          OF FIDUCIARY DUTY;
    SCREEN CAPITAL INTERNATIONAL,
18  INC., a Delaware Corporation; ARAMID           (III)  FRAUD;
    CAPITAL PARTNERS LLP, a United
19  Kingdom limited liability partnership;         (IV)   UNJUST ENRICHMENT;
    TIMOTHY LEVY, an individual;
20  THOMAS MCGRATH, an individual;                 (V)    INJUNCTIVE RELIEF; and
    DAVID BREE, an individual; ROGER
21  HANSON, an individual; THOMAS                  (VI)   ACCOUNTING; and
    ADAMEK, an individual; STONEHENGE
22  CAPITAL COMPANY LLC, an Ohio                   (VII)  APPOINTMENT OF A RECEIVER
    Corporation; and FUTURE CAPITAL
23  PARTNERS, a United Kingdom company,
                                                   JURY TRIAL DEMANDED
24              Defendants,
                                                   Filing Date:   July 22, 2011
25  and ARAMID ENTERTAINMENT FUND
    LIMITED, a Cayman Islands Company,
26              Nominal Defendant.
27
28

                            AMENDED COMPLAINT

1    Plaintiffs Wimbledon Financing Master Fund, Ltd. ("Wimbledon"), a Cayman Islands

2    company; and Stillwater Market Neutral Fund III SPC ("Stillwater"), a Cayman Islands company

3    (collectively, "Plaintiffs"), by their attorneys, O'Melveny & Myers LLP, bring this Complaint on

4    their own behalf and on the behalf of nominal defendant Aramid Entertainment Fund Limited

5    ("AEF") against Defendants David Molner ("Molner"); Screen Capital International, Inc.

6    ("SCI"); Aramid Capital Partners, LLP ("Aramid Capital"); Tim Levy ("Levy"); Thomas

7    McGrath ("McGrath"); David Bree ("Bree"); and Roger Hanson ("Hanson" and collectively with

8    Levy, McGrath and Bree, "the Director Defendants"); Thomas Adamek ("Adamek"); Stonehenge

9    Capital Company LLC ("Stonehenge"); and Future Capital Partners ("Future Capital")

10    (collectively, "Defendants"), and allege as follows:

11    **Nature of the Action**

12    1.    This is an action by non-voting investors in AEF, a Cayman Islands mutual fund

13    established in 2006, to recover for the systematic looting and self-dealing transactions entered

14    into by its principals.  Plaintiffs allege on information and belief that defendants, individually and

15    collectively, have acted to conceal and misrepresent the true state of affairs at AEF.

16    2.    For the last three years, Defendant Molner deliberately hid from AEF's auditors

17    that he and the other defendants executed a series of *ultra vires*, insider transactions designed

18    specifically to siphon funds from AEF shareholders.  Molner and defendants entered into multi-

19    million dollar loan agreements whereby they used AEF capital to obtain monetary and equitable

20    benefits for themselves—rather than for the benefit of AEF and its shareholders.

21    3.    These loans—totaling more than $60 million and half of the current value of

22    AEF—are currently non-performing or have been written off altogether.  Indeed, all but one of

23    the loans that AEF, acting at the direction of Molner and the Director Defendants, made to the

24    insider entities are presently impaired.  To this day, the full extent of Molner and defendants'

25    looting remains unclear as a result of Molner's ongoing refusal to allow an audit, his refusal to

26    provide proper disclosures, and his active concealment of AEF's true financial condition.

27    4.    When various investors complained of Defendants' misconduct, Molner and the

28    Director Defendants agreed to the appointment of an independent director, Christopher Borde, to

AMENDED COMPLAINT

1  investigate AEF's dealings. At the same time, Molner isolated Borde by keeping him in the dark

2  and denying him access to records concerning Molner's insider transactions. For example, when

3  Borde sought to investigate the improper insider transactions that Molner and the Director

4  Defendants had engaged in, Molner repeatedly denied Borde access to AEF's books and records.

5  Defendants went so far as to exclude Borde (an independent director) from several AEF board

6  meetings.

7          5.      Despite investors expressing serious concerns about Molner and Director

8  Defendants' looting and self-dealing for multiple years, AEF continues to refuse to allow a truly

9  independent accounting of their books and records since 2008. As recently as April 25, 2011,

10  Molner and Director Defendants manufactured new excuses to fire the fund's auditors, Ernst &

11  Young, before the firm could complete its 2009 annual report on AEF. To this day, Ernst and

12  Young has not been able to complete its 2009 audit or an audit for 2010. If audited, the insiders

13  know their self-dealing will be exposed, as will the true value of the assets.

14          6.      Molner and the Director Defendants have also rejected demands that they—and

15  other directors handpicked by Molner—resign and that AEF be allowed to wind down its

16  business in an orderly fashion.

17          7.      AEF has five classes of stock (A, B, C, D and E), but only the holders of the class

18  A stock are allowed to vote. Molner dominates the voting shareholders and controls the fund.

19  Defendant Molner, through Defendant SCI, a corporate entity he wholly owns, controls Aramid

20  Capital, the owner of Class A stock. Molner has used that ownership to control AEF. The

21  majority of AEF's directors were selected by Molner and each has abdicated their fiduciary

22  responsibilities, thereby allowing Molner to exercise near total control. On information and

23  belief, the Director Defendants have conspired with Molner and abused their positions as AEF's

24  fiduciaries by paying millions of dollars in fees to themselves and causing AEF to make over $60

25  million in loans to entities they control on terms that were advantageous to those entities and

26  grossly unfavorable to AEF.

27          8.      Pursuant to their scheme to secretly and unlawfully convert AEF's assets,

28  Defendants have not undertaken any action on behalf of AEF to collect on insider loans. Indeed,

2

AMENDED COMPLAINT

1    in some cases, they have even modified or acquiesced in modifying the terms of those loans to

2    make them even more favorable to the insiders—at AEF's expense and without any legitimate

3    business reason to support the modifications. For example, in one restructuring of an insider

4    loan, the guarantees were released for no reason and without any consideration to AEF.

5         9.    On information and belief, Molner, aware that the value of AEF's assets was

6    deteriorating, continued to cause misleading reporting to investors reflecting falsely that AEF's

7    assets were performing. Molner dissuaded investors from redeeming their investments in AEF

8    (which they had the right to do under the terms of the investment) by making material

9    misrepresentations about AEF's health. Less than a year later, AEF suspended redemptions

10   altogether. At the same time Molner reported to investors that there were no funds to repay them,

11   he nonetheless continued to operate AEF in a self-interested manner to the detriment of AEF in

12   violation of his fiduciary duties and solely for the purpose of benefitting himself and Director

13   Defendants.

14        10.    On information and belief, Molner diverted value from AEF to himself and his

15   affiliates and depleted AEF's funds and resources by (i) making insider loans that directly

16   resulted in the payment of millions of dollars in further fees to Molner and other insiders; (ii)

17   engaging in insider transaction that benefitted his entities; and (iii) making concessions on insider

18   loans that greatly reduced AEF's rights and returns yet allowed him and the Director Defendants

19   to be paid even more excessive fees.

20        11.    Notwithstanding that AEF was purportedly established to make loans to entities in

21   the entertainment business, Molner fraudulently conspired with other insiders to use AEF to

22   enrich himself and entities he controlled, issuing loans to insider entities that Molner and his co-

23   conspirators never had any intention to collect upon.

24        12.    The looting by Molner, under the acquiescent watch of the Director Defendants,

25   put AEF in such dire financial condition that redemptions were suspended in January 2010 and it

26   was delisted from the Cayman Islands Stock Exchange in March 2010. Nonetheless, Molner

27   refused, and continues to refuse, to relinquish control over AEF or to allow Ernst & Young to

28

3

AMENDED COMPLAINT

1  audit the fund's books and records. The directors of AEF other than Borde have acquiesced to

2  Molner's control over AEF.

3      13.    Molner and Director Defendants, in an effort to punish Plaintiffs for attempting to

4  stop the looting of the fund, deliberately caused AEF to immediately suspend any and all

5  distributions to Plaintiffs and no other shareholders as a punitive measure for moving to protect

6  their assets and enjoin defendants' fraud and misconduct. Molner and Director Defendants'

7  decision to suspend Plaintiffs' distributions was an unauthorized act designed to deter Plaintiffs

8  from moving forward with this lawsuit and to discourage other AEF investors from joining as

9  additional plaintiffs.

10     14.    The Plaintiffs are forced to bring this action to minimize the loss of their

11 investments in AEF and to take action to stop the looting, self dealing, and abdication of fiduciary

12 responsibility by the Defendants. Accordingly, Plaintiffs seek compensatory and punitive

13 damages for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud, and

14 unjust enrichment, and seek injunctive and equitable relief, including but not limited to the

15 appointment of a receiver to take immediate control of AEF.

16                                    **Parties**

17 **Plaintiffs**

18     15.    Stillwater Market Neutral Fund III SPC ("Stillwater"), is a company organized

19 under the laws of the Cayman Islands, with its principal place of business in the Cayman Islands,

20 and beneficial owner of non-voting shares of AEF.

21     16.    Wimbledon Financing Master Fund, Ltd. ("Wimbledon"), is a company organized

22 under the laws of the Cayman Islands, with its principal place of business in the Cayman Islands,

23 and beneficial owner of non-voting shares of AEF.

24     17.    In August 1997, Wimbledon and AEF entered into a contract ("Agreement")

25 whereby Wimbledon made a multi-million dollar investment to purchase non-voting shares in

26 Aramid.

27     18.    Wimbledon shares in AEF have always been held by Fortis Bank (Cayman)

28 Limited ("Fortis") as the registered owner in the Cayman Islands.

                                       4

                              AMENDED COMPLAINT

19. Wimbledon and Fortis entered into a Custodian Agreement ("Custodian Agreement") dated August 29, 2007, whereby either party could terminate the agreement pursuant to Clause 13.1.

20. On or around November 4, 2010, Wimbledon sought to terminate the Custodian Agreement and transfer the name of the registered owner from Fortis directly to Wimbledon.

21. On or around November 8, 2010, AEF's Administrator informed Wimbledon that AEF's Directors rejected the transfer of the shares to Wimbledon.

22. Molner and AEF's Directors rejected the transfer for the sole purpose of attempting to prevent Wimbledon from exposing and seeking redress for their fraud and other wrongdoing and recovering its assets. Such a rejection is void as a matter of public policy as its sole purpose is to perpetuate further fraud on the shareholders.

**Defendants**

23. David Molner, an individual, is, on information and belief, a citizen of the State of California who resides in Beverly Hills, California.

24. SCI is a corporation organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California. David Molner is the sole owner of SCI.

25. Aramid Capital is a United Kingdom limited liability partnership with its principal place of business in the United Kingdom. Aramid Capital holds Class A shares of AEF, which are the only voting shares issued by AEF. Aramid Capital is owned by three entities, including SCI. Molner is the chairman of Aramid Capital and operates Aramid Capital out of his SCI office in Los Angeles, CA.

26. Tim Levy, an individual, is, on information and belief, a citizen of, and resides in, the United Kingdom. Levy is a director of AEF and, on information and belief, the CEO of Future Capital, a member and one-third owner of Aramid Capital.

27. Thomas McGrath, an individual, is, on information and belief, a citizen of the State of California who resides in Los Angeles, California. McGrath is a director of AEF.

28. David Bree, an individual, is, on information and belief, a citizen of, and resides in, the Cayman Islands. Bree is a director of AEF.

5

AMENDED COMPLAINT

29.    Roger Hansen, an individual, is, on information and belief, a citizen of, and resides in, the Cayman Islands.  Hansen is a director of AEF.

30.    Thomas Adamek, an individual, is, on information and belief, a citizen of State of Louisiana who resides in Baton Rouge.  Adamek is, on information and belief, the former chairman of Aramid Capital and the managing member of Stonehenge, a member and one-third owner of Aramid Capital.

31.    Stonehenge is, on information and belief a Louisiana Corporation, with its principal place of business in Louisiana.  Stone is a member and one-third owner of Aramid Capital.

32.    Future Capital Partners is a United Kingdom Company with its principal place of business in the United Kingdom.  Future Capital Partners is a member and one-third owner of Aramid Capital.

**Nominal Defendant**

33.    Aramid Entertainment Fund Limited ("AEF") is a company organized under the laws of the Cayman Islands, with its principal place of business in the Cayman Islands.

### Jurisdiction and Venue

34.    Molner, who controls AEF through a majority of shares or through his control and domination of the Aramid Capital membership, is a resident of Los Angeles County.

35.    The majority of the acts, omissions, and injuries described in this lawsuit, including without limitation Molner's looting of AEF and issuance of below-market loans to insider entities, occurred in Los Angeles, CA.

36.    The majority of the documents, witnesses, and evidence related to the improper and insider transactions executed by Defendants as described herein are located in Los Angeles, CA.

37.    The jurisdiction of this Court is founded upon Cal. Civ. Proc. Code § 410.10.

38.    Venue is proper in Los Angeles County, State of California, pursuant to Cal. Civ. Proc. Code § 395(a).

6

AMENDED COMPLAINT

## Factual Allegations

### AEF's Capitalization and the Offering Memorandum

39.    AEF is a Cayman Islands exempted open-ended investment company established August 15, 2006. It has corporate offices in the Cayman Islands and the United Kingdom. AEF's stated business purpose is to provide short- to medium-term loans to producers and distributors of film, television and other media, secured by a variety of the borrowers' assets, including: tax credits, physical elements, revenue participation rights, distribution rights, underlying copyrights, derivative rights, sales contracts and other receivables. AEF has five classes of stock: A, B, C, D and E. However, only the class A shares are entitled to vote. Class A shares are held by Aramid Capital, which is in turn owned by just three entities, at least one of which is controlled by Molner. Molner is the chairman of Aramid Capital and, as such, is able to and does control Aramid Capital.

40.    AEF issued an offering memorandum dated November 16, 2006, for the issuance of certain shares labeled Class B Shares, Class C Shares, Class D Shares and Class E Shares (the "Offering Memorandum").

41.    Molner and the Director Defendants made material misstatements to AEF's investors, including Plaintiffs, regarding AEF's business purpose, ability to carry out its business, and AEF's financial condition. The purpose of the misstatements was to induce the investors to invest in AEF and, once invested, deter the investors from taking action to enforce their rights.

42.    Through the Offering Memorandum, Molner and the Director Defendants promised falsely that AEF would have appropriate staffing to carry out legitimate, commercially reasonable lending activities. Molner and the Director Defendants never intended that AEF would live up to those promises. Instead, they sought the investors' money for the purpose of self-dealing, engaging in insider transactions, and lending to themselves or their entities at below-market terms while paying themselves or their entities enormous and unjustified fees for "finding" and "negotiating" those transactions.

43.    The Offering Memorandum also sets forth certain specific investment guidelines concerning the type and scope of activities in which AEF could engage. In particular, the

7

AMENDED COMPLAINT

1   Offering Memorandum provided that bridge loans were to have durations of approximately 3-6

2   months, tax-credit loans were generally to have a duration of 18 months, and gap-financing loans

3   were generally to have a duration of 12-24 months. The Offering Memorandum also provided

4   that the Fund would seek investments that would earn it an average annual return of 20 percent,

5   with a range of up to 98 percent, while maintaining a relatively low risk profile.

6       44.    As set forth in the Offering Memorandum, AEF's board of directors was supposed

7   to have sole authority and discretion for all investment-making and asset-allocation decisions.

8   Instead, AEF's board wrongfully abdicated that authority to Molner and Molner-controlled

9   entities. Armed with that authority, Molner, along with other insiders, used AEF to line their own

10  pockets by paying themselves outlandish fees for their own "services," and additionally made

11  loans to insider-controlled entities that contained terms that no reasonable lender would find

12  remotely acceptable.

13      45.    Molner and Director Defendants entered into a series of transactions where they

14  used AEF funds to secure themselves and their insider entities valuable equitable rights from AEF

15  debtors. AEF put up all of the capital and assumed all of the risk in these transactions, yet AEF

16  received little benefit, if any. Such transactions were in clear violation of the investment

17  guidelines set forth in the Offering Memorandum provided to the shareholders of AEF. While no

18  reasonable director would have entered into such transactions, Molner and Director Defendants

19  consistently ignored the best interests of AEF.

20      46.    To mask the nature and impropriety of those transactions, Molner and the Director

21  Defendants repeatedly and consistently provided the shareholders with a rosy but false picture of

22  the value of AEF's assets throughout 2008-2011. Their misrepresentations included, without

23  limitation, concealing AEF's suffering financial health by refusing to take impairments on loans

24  that were never going to be repaid and refusing to adjust loan portfolio valuations to reflect the

25  many non-performing or under-performing loans. Further, the Defendants caused AEF not to

26  seek the collection of over $60,000,000 in loans owed by insiders and affiliates of insiders. Some

27  of the most egregious insider loans and transactions are described below.

28

8

AMENDED COMPLAINT

**The Insider Transactions**

47.    Throughout AEF's existence, Molner and other insider Defendants have used AEF
and their control over the board of directors to conduct numerous self-dealing transactions to reap
large fees for themselves while providing their affiliates with cheap liquidity on terms grossly
unfair to AEF.  The Defendants also routinely forgave loans made to entities under their control.

48.    Almost all of these loans were made outside of the parameters set forth in AEF's
Offering Memorandum.

49.    The following transactions were negotiated and executed in Los Angeles,
California, and the records related thereto are in the possession of Molner and Molner-related
entities in Los Angeles, California.

50.    **The Incentive Transaction:**  Borde's investigation revealed that in the "Incentive
Transaction", Molner and Levy caused AEF to provide two related loans totaling approximately
$32 million to Incentive Filmed Entertainment ("IFE"), which is partly owned by Molner's SCI,
and of which Molner himself was the chairman.

51.    Despite the fact an initial $22 million loan from AEF to IFE was well outside the
investment guidelines set forth in AEF's Offering Memorandum, Molner and his affiliates
approved it because they—not AEF— received nearly $5 million in cash considerations and a
considerable amount of equity in IFE as part of the transaction.  Even though AEF funds were
used to finance the entire loan, AEF received none of the upside.

52.    Pursuant to the Incentive Transaction, AEF provided an additional loan of
approximately $10 million to Incentive Filmed Entertainment Equity Holding ("IFEEH"), owned
by Molner's SCI and Levy's Future Capital.  The combined amount of the IFE and IFEEH loans
was $32 million.  The loans required that the funds be used for film production and development.
The loans were significant departures from AEF's investment guidelines set forth in the Offering
Memorandum with respect to, among other things, risk, duration and collateral coverage.  The
combined loans provided for a nearly four-year maturity, with no requirement for IFE or any of
the parties to pay any interest on a current basis.  The loans represented 100% financing of the
transaction thus making it exceptionally risky.  Indeed, even a 50% loan in an already extremely

9

AMENDED COMPLAINT

1   risky industry during an economic upheaval would not have been reasonable. For all this, SCI

2   and Future Capital each put up only a $2.5 million guarantee, which Defendants directed AEF to

3   later forgive.

4         53.    Molner also acted for his own further personal benefit and to AEF's detriment by

5   causing IFE enter into a lucrative management contract with SCI and by further diverting rights

6   from IFE to his other affiliates.

7         54.    Molner and Levy subsequently caused AEF to restructure both loans on terms

8   even more favorable to SCI and Future Capital Partners. Such favorable terms included: (a) the

9   waiver of guarantees by each of those parties for less than a reasonable equivalent; (b) the

10   conversion of the payment of interest in cash-equivalent to payment-in-kind interest; and (c) the

11   suspension of interest accruals. Thus, after making a below-market loan contrary to AEF's

12   investment guidelines, the directors, under the control of Levy and Molner, approved a

13   restructuring that rendered the loan even riskier for AEF (and even more favorable to the

14   insiders).

15         55.    As best plaintiffs can determine, neither of the IFE and IFEEH loans has been

16   repaid, nor has the board taken any action with respect to the collection of the loans,

17   notwithstanding that the total balance owed in excess of $35 million. The value of this

18   investment is believed to be substantially impaired.

19         56.    **The Sierra Transaction:**  Borde's investigation revealed that in December 2009,

20   AEF's board approved a $1 million loan to Sierra Pictures, LLC ("Sierra Pictures"). That loan

21   funded in April 2010. At the same time, Sierra entered into a three-year agreement with IFE

22   (mentioned above), pursuant to which Sierra Pictures was to act as the exclusive sales agent for

23   IFE and IFE was to source all theatrical films from Sierra Pictures. IFE was obligated to pay $1

24   million a year to Sierra Pictures, substantial executive producer fees on each film, and profit

25   participations. Sierra Pictures' two managers are entitled to salaries up to $1 million each.

26         57.    Sierra Pictures, in turn, granted SCI the exclusive right to: (a) finance any tax

27   credits, rebates, and other similar government-backed production incentives for Sierra Pictures-

28   controlled films; (b) exercise a last refusal to finance, or arrange for the financing of, certain

10

AMENDED COMPLAINT

1  expenses for any Sierra Pictures-controlled film; and (c) act as exclusive agent to raise capital for

2  Sierra Pictures. For this, SCI was entitled to receive a fee equal to 5 percent of any junior capital

3  actually raised, plus 2 percent of any senior debt raised.

4      58.    Again, AEF was left with an account receivable where the debtor had no intention

5  of repaying the loan while Molner and SCI gained valuable rights by giving away AEF

6  shareholders' money.

7      59.    **The IM Global Transaction:** Borde's investigation revealed that in June 2008,

8  AEF provided a $5.0 million term loan and a $1.5 million working capital loan to Stuart Ford to

9  fund the acquisition of 80 percent of the equity of International Media Global ("IM Global"). SCI

10  and Ford guaranteed the loan. The loan is secured by a first lien on IM Global's assets. The

11  transaction provided AEF with 9.9% of the equity, but provided SCI 25.1% of the equity as a

12  structuring fee/award. SCI also received an exclusive five-year mandate to represent IM Global

13  in the sale process, the right to source tax-credit funding opportunities, and a seat on the IM

14  Global board.

15      60.    Those exceptionally favorable terms notwithstanding, in December 2009 the loans

16  were restructured. IM Global purchased AEF's and SCI's equity for the aggregate sum of $2.5

17  million (with SCI receiving $1.793 million), and additionally made a $1,557,500 payment to

18  AEF. The guarantees by SCI and Ford were released.

19      61.    In total, AEF invested $6.5 million to obtain a fraction of the equitable interests in

20  IM Global that were acquired by SCI, even though AEF took all of the risk and SCI's guarantee

21  was predictably released by Molner and Director Defendants.

22      62.    **The Future Capital Partners and SCI Transactions:** Borde's investigation

23  revealed that one of AEF's first loans, made in 2007, was for $5 million and was made to Future

24  Capital Partners, one of the members of the Technical Services Provider and an entity that is,

25  upon information and belief, controlled by Levy. AEF has now been forced to take a provision

26  on the loan as potentially impaired, meaning that Future Capital Partners is unlikely ever to repay

27  it. AEF has never collected on the loan nor has it apparently ever attempted to do so.

28

11

AMENDED COMPLAINT

63.    In either 2008 or 2009, AEF lent a Molner entity, Defendant SCI, $1.5 million. In March 2010, AEF took an impairment on the full amount of the loan without explanation. The directors, apparently acting at Molner's direction, have caused AEF not to seek to collect the loan.

64.    Molner has also used AEF in other transactions that deviated from AEF's investment guidelines. He has done so to siphon off lucrative fee arrangements for his company, SCI, or in certain circumstances to obtain upside equity interests in borrowers for the benefit of SCI, all the while ensuring that AEF retained the entire credit risk.

65.    **The Key Brand Entertainment Transaction:**  Borde's investigation revealed that in another transaction, Molner caused AEF to provide tax credit financing to Key Brand Entertainment, an entity chaired by McGrath (one of the Director Defendants), in an amount of $1.5 million. In 2010, Molner and the Director Defendants caused AEF to write off the loan in its entirety. Molner and McGrath had been friends for decades and, in fact, McGrath had given Molner a position at Viacom early in Molner's career.

66.    Indeed, Molner has admitted to AEF investors that he distributed funds to himself, related entities, and Director Defendants without any disclosure—and he has written down loans from AEF that he gave to his business associates and friends.

67.    Molner continuously ignored the obvious conflict of interest when engaging in these insider transactions on unfavorable terms to AEF and in forgiving loan guarantees made by related party entities. In doing so, Molner ignored his fiduciary duty to AEF shareholders to maximize the value of their investments.

68.    The transactions detailed above are only the tip of the iceberg. The full extent of Molner and Director Defendants remains unknown because AEF investors and auditors alike have been kept in the dark by Molner and the other defendants.

**The Services Provision Agreement**

69.    Another facet of Molner's scheme required AEF's entry into a "Services Provision Agreement" with Aramid Capital, pursuant to which Aramid Capital acted as the "Technical

12

AMENDED COMPLAINT

1    Services Provider" to AEF.  Aramid Capital, as the Technical Services Provider, acquired and

2    holds Class A non-redeemable shares – the only class of shares entitled to vote.

3         70.    Aramid Capital, as the Technical Services Provider, has been paid exorbitantly

4    high fees pursuant to the Services Provision Agreement in exchange for its purported services,

5    including its supposed but non-existent due diligence and deal monitoring on AEF loans and

6    investments.

7         71.    Aramid Capital is owned by its three members: Future Capital Partners, SCI, and

8    Stonehenge Capital Company LLC.  Molner is the founder and controlling party of SCI.  On

9    information and belief, Levy is the chief executive officer of Future Capital Partners, a member of

10   Aramid Capital.

11        72.    On information and belief, Molner is the chairman of Aramid Capital, makes all

12   material business decisions on behalf of Aramid Capital, and is Aramid Capital's controlling

13   shareholder.  Indeed, Molner acted as the "Technical Service Provider" for AEF and was the

14   beneficiary of unreasonable fees that were essentially stolen from innocent AEF shareholders.

15        73.    For the past four and a half years, Molner has orchestrated his scheme to defraud

16   AEF investors and line his own pockets as the "Technical Service Provider" for AEF from his

17   office and residence in Los Angeles County.

18   **Affirmative Misrepresentations of AEF's Financial Health**

19        74.    Molner and the other insiders caused AEF to take at least two actions that masked

20   the insider transactions and misled shareholders.  First, they deliberately created a misleading

21   picture of AEF's liquidity and net asset value to mislead shareholders from taking action to

22   enforce their rights.

23        75.    The insiders' efforts to disguise the true financial picture of AEF include the

24   following: when AEF's loan portfolio was to be independently evaluated, a number of loans,

25   including insider loans such as loans under the Incentive Transaction, were withheld from the

26   review process, but were nonetheless included in the total net asset value of the portfolio.  Molner

27   and the other insiders made sure there was no adjustment for the non-performance of those loans

28

13

AMENDED COMPLAINT

1   (including, in numerous instances, insider loans) in valuing the portfolio, thereby causing

2   shareholders to see an inflated net asset value.

3      76.    Molner and the other insiders did not take any impairment or make any valuation

4   adjustment with respect to a number of loans that were in litigation notwithstanding that an

5   independent review of expected future cash flows excluded those loans.

6      77.    On information and belief, one or all of the Individual Defendants represented to

7   Grant Thornton, which was working to provide an "independent" valuation of the loan portfolio,

8   and to investors, that AEF would recover in full on each and every loan that was in litigation.  In

9   particular, the Individual Defendants represented that loans to certain entities would be recovered

10  in full notwithstanding that the debtors were in bankruptcy.  Of course, when those

11  representations were made, there was no likelihood that they would or could be paid in full.

12     78.    Molner and Director Defendants' *modus operandi* is to use AEF investor funds to

13  pay professionals, including but not limited to Grant Thornton, Salter Group, and the Tenon

14  Group, to present inflated valuations of AEF based on these groups' 1) cursory review of an

15  incomplete picture of the true state of AEF financial affairs; and 2) reliance on affirmative

16  misrepresentations by Molner and Director Defendants.  These professionals "reports" are littered

17  with assumptions based on affirmative misrepresentations made by Molner and Director

18  Defendants and qualifications that their findings are based on the limited financial records Molner

19  and Director Defendants allowed them to review.  To this day, Molner and Director Defendants

20  have refused to allow a completely objective—and comprehensive—review of AEF's books and

21  records.  Ernst & Young has attempted such a review but has been stifled and prevented by

22  Defendants from completing its 2009 audit for well over a year.

23  **The Misconduct is Ongoing**

24     79.    In early 2011, AEF received almost $15 million in funds yet AEF announced it

25  would only distribute a fraction of the money ($2.2 million) to its investors.

26     80.    For the last three years, the Defendants repeatedly used their influence and

27  authority to cause AEF to overstate the net asset value of the loan portfolio, and they misleadingly

28

14

AMENDED COMPLAINT

1    told shareholders that the non-performance of certain single-picture loans to non-insiders caused

2    the devaluation of the loan portfolio and the liquidity problems.

3        81.    Shareholders have repeatedly expressed deep concerns to AEF's directors and

4    Molner with respect to certain aspects of the loan portfolio's net asset value and with respect to

5    conflicts of interest and insider transactions.

6        82.    In response, Molner has assured such investors that the non-performing or under-

7    performing loans were a small part of the loan portfolio and that the recently reported net asset

8    value of AEF was accurate.  This was deliberately and grossly misleading.

9        83.    On March 8, 2010, various shareholders wrote to AEF's directors reiterating their

10   concerns and seeking remedial action.  In particular, the shareholders sought an explanation of

11   recent valuations of the loan portfolio and the failure to take impairments on any of the loans in

12   litigation.  The shareholders further expressed concern regarding the self-dealing transactions

13   described above.  Finally, the shareholders expressed concern with respect to the equal and fair

14   treatment of all shareholders, including those seeking redemptions and those not seeking

15   redemptions.

16       84.    Pursuant to the March 8, 2010 letter, the shareholders sought appointment of

17   another independent director, the resignation of all non-independent directors, and an immediate

18   orderly wind down of AEF across all shares.

19       85.    The March 8th letter resulted from the frustration the investors had expressed to

20   Molner and AEF's directors in the preceding months to no effect.  The directors responded by

21   letter dated March 19, 2010, declining to wind down the fund and declining the request that non-

22   independent directors resign, but agreeing to allow the appointment of an independent director.

23   The letter ignored the write-off of the loan to SCI and failed to address the escalating receivables

24   pursuant to certain insider loans.

25       86.    Christopher Borde was chosen as the independent director to conduct an

26   independent review of AEF's books and records to uncover the full extent of the insider

27   transactions.  Molner and the directors, seeking to keep the insider transactions under wraps,

28   refused to cooperate with Borde's review, and instead sought to hide material information from

15

AMENDED COMPLAINT

1   Borde. Borde said he was provided access only to a limited number of documents and Molner

2   and Director Defendants refused to give him access to complete accounting records,

3   documentation of insider loans, and loan performance of all AEF transactions.

4      87.    Molner, though not officially a director of AEF, individually wrote to the

5   shareholders on April 7, 2010, discussing the need for a write-down of the net asset value of the

6   loan portfolio as a whole. He also used the letter to blame all AEF's impairments on certain

7   disputed loans, while failing to mention the outstanding receivables associated with the insider

8   transactions.

9      88.    On April 29, 2011, Molner and Director Defendants distributed a Quarterly Report

10  on behalf of AEF for the period ending March 31, 2011. In the Quarterly Report, Molner and

11  Director Defendants stated that Ernst & Young's "ongoing" audit of AEF's 2009 books might be

12  suspended for a myriad of baseless reasons. Molner and Director Defendants listed Ernst &

13  Young as AEF's auditors in the Information Memorandum used to solicit investments in AEF.

14  Now that the investors have given AEF millions and millions of dollars, Defendants now suggest

15  they may start the 2009 audit from scratch and hire a new accounting company instead of allow

16  Ernst & Young to finish the job they were hired to do. Knowing a proper audit of AEF's books

17  would show the full extent of Molner and Director Defendants' fraud and misconduct, AEF

18  continues to refuse to allow a thorough, independent investigation into their books and records.

19     89.    In an effort to further delay the completion of the 2009 audit, Molner and Director

20  Defendants refuse to allow Ernst & Young to speak with Borde—the independent director who

21  when provided access to only a portion of AEF's books and records, uncovered a multitude of

22  illicit, insider transactions executed by Molner and Director Defendants.

23     90.    Plaintiffs have not made a demand on AEF's board of directors to bring this action

24  on behalf of AEF because such a demand would have been futile given that all but one of the

25  directors committed, authorized, approved, ratified or failed to rectify the wrongdoings alleged

26  herein, and further ignored the demand of the shareholders for remedial action.

27     91.    The board of directors also declined a request to remove non-independent directors

28  and to remedy the conflicts of interest pervasive in and among AEF's controlling parties.

16

AMENDED COMPLAINT

92.    On July 11, 2011, Molner and Director Defendants instructed the fund to suspend any and all distributions to Plaintiffs. Such a suspension is improper, unjustified and not provided for under the bylaws.

93.    Consequently, Plaintiffs seek damages from Defendants for fraud, unjust enrichment, breach of fiduciary duty (on behalf of themselves and AEF) and aiding and abetting the directors' breaches of fiduciary duty (on behalf of themselves and AEF). Plaintiffs additionally seek injunctive relief preventing Defendants' from dissipating assets through a sale or other transfer, and from entering into transactions with any insider.

## FIRST CAUSE OF ACTION

**(Breach of Fiduciary Duty Derivatively on Behalf of AEF Against the Director Defendants, Aramid Capital and Molner)**

94.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

95.    The Director Defendants owe fiduciary duties to AEF.

96.    Aramid Capital owns all of the voting stock of AEF, and is a controlling shareholder. As a controlling shareholder, it owes fiduciary duties to AEF.

97.    As the chairman and controlling person of Aramid Capital, a Class A shareholder, Molner owes fiduciary duties to AEF.

98.    The Director Defendants, Molner and Aramid Capital have breached their fiduciary duties by conducting or acquiescing to insider transactions harmful to AEF and its shareholders while concealing the nature of those transactions and not pursuing the collection of the loans made pursuant to those transactions.

99.    The Director Defendants, Molner and Aramid Capital have breached their fiduciary duties owed to AEF by presenting misleading information concerning the value of AEF's loan portfolio in the name of AEF.

100.    The Director Defendants, Molner and Aramid Capital have breached their fiduciary duties by using AEF's assets and causing AEF to enter into transactions for personal gain to the detriment of AEF.

17

AMENDED COMPLAINT

1     101.   The breaches of fiduciary duty on the part of the Director Defendants, Molner and

2   Aramid Capital have caused AEF significant pecuniary harm.

3     102.   Director Defendants, Molner and Aramid Capital have acted with fraud, malice or

4   oppression entitling Plaintiffs to an award of punitive damages.

5     103.   Accordingly, the Plaintiffs, on behalf of AEF, seek damages incurred due to the

6   actions of the Director Defendants, Molner and Aramid Capital in an amount to be determined at

7   trial.

8                  **SECOND CAUSE OF ACTION**

9
       **(Aiding and Abetting Breach of Fiduciary Duty Derivatively on Behalf of
AEF Against Molner, Levy, Adamek, Future Capital, Aramid Capital and SCI)**
10

11     104.   Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

12     105.   Molner, as chairman and controlling person of Aramid Capital (the Technical

13   Services Provider and Class A shareholder), knew of the directors' fiduciary duties to AEF's

14   shareholders, including Plaintiffs, and encouraged and substantially assisted in the breach of those

15   duties.

16     106.   Molner exerted control over the Defendant Directors and caused them to conduct

17   or acquiesce in insider transactions harmful to AEF's shareholders that benefited Molner and

18   entities controlled by him.

19     107.   Molner encouraged and assisted the Defendant Directors in making a loan to his

20   entity SCI and in writing off that loan and failing to pursue its collection.

21     108.   Molner, as chairman of Aramid Capital, has held himself out as representing AEF

22   in connection with communications with AEF's investors. Molner, for himself and for Aramid

23   Capital, actively assisted the directors in breaching their fiduciary duties.

24     109.   Molner also controls SCI. SCI, at the direction of Molner, aided and abetted the

25   Defendants' breaches of their fiduciary duties by actively participating in schemes by Molner and

26   Levy to use AEF's assets to fund SCI's activities that SCI knew or should have known were

27   improper.

28

18

AMENDED COMPLAINT

110.    SCI, under Molner's control, aided and abetted the Defendants in pursuing an involuntary petition on a claim with little chance of recovery and significant risk to AEF and its constituents, in breach of the Defendants' fiduciary duties.

111.    Levy aided and abetted the Defendants' breaches of their fiduciary duties by causing AEF to enter into below-market loans that were beneficial to Levy and other insiders and detrimental to AEF and its shareholders.

112.    Future Capital, under Levy's control, aided and abetted the Defendants' breaches of their fiduciary duties by actively participating in schemes by Molner and Levy to use AEF's assets to reap large fees and other rewards for Future Capital to the detriment of AEF and its shareholders.

113.    Adamek, as former chairman of Aramid Capital and as the controlling person of Stonehenge, aided and abetted the Defendants' breaches of their fiduciary duty by actively participating in schemes by Molner and Levy to use AEF to conduct insider loans that were detrimental to AEF and its shareholders—including but not limited to the exorbitant brokerage fee paid to Stonehenge on at least one insider transaction.

114.    As a result of the Defendants' breach of their fiduciary duties, AEF has suffered substantial harm.

115.    Defendants have acted with fraud, malice or oppression entitling Plaintiffs to an award of punitive damages.

116.    Accordingly, Plaintiffs seek damages, on behalf of AEF, incurred for such conduct, in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**(Unjust Enrichment Derivatively on Behalf of AEF Against
Aramid Capital, Molner, SCI, Levy, Future Capital, Adamek, and Stonehenge)**

117.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

118.    Aramid Capital, Molner, SCI, Levy, Future Capital, Adamek and Stonehenge (the "Unjust Enrichment Defendants") have had and continue to have a benefit conferred on them

19

AMENDED COMPLAINT

1   through the insider transactions in which they wrongfully engaged to the detriment of AEF and its

2   shareholders.

3       119.    The above Defendants are aware that they have received such benefits.

4       120.    It would be unjust to allow the above Defendants to retain the monetary benefits

5   that they have realized through their wrongful conduct, as set forth above.

6       121.    Accordingly, Plaintiffs, on behalf of AEF, seek damages from the above.

7   Defendants in an amount by which those Defendants have been unjustly enriched.

8   **FOURTH CAUSE OF ACTION**

9   **(Preliminary and Permanent Injunction Derivatively on
10   Behalf of AEF Against Molner and the Director Defendants)**

11      122.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

12      123.    Molner continues to control AEF's assets and there is a substantial likelihood that

13  without injunctive relief from this Court, Molner will dissipate AEF's assets for less than

14  reasonably equivalent value.

15      124.    Molner and the Director Defendants (through their participation and/or

16  acquiescence) have caused substantial harm to AEF and its shareholders by conducting insider

17  transactions, and have failed and refused, upon request, to act in the best interests of AEF and its

18  shareholders.

19      125.    Defendants have also refused, upon request of the shareholders, to relinquish

20  control of AEF and will continue to do substantial harm to AEF and its shareholders if they are

21  allowed to continue their control over AEF's assets.

22      126.    Accordingly, Plaintiffs request a preliminary and permanent injunction, preventing

23  Defendants from selling, encumbering, wasting or otherwise transferring AEF's assets and

24  preventing Defendants from entering into any transactions on behalf of AEF with any director or

25  controlling party of AEF or Aramid Capital or any affiliate of any director or controlling party.

26      127.    Further, Plaintiffs request a preliminary and permanent injunction preventing AEF

27  from paying the legal fees for Defendants because the causes of action stated herein are not of the

28

20

AMENDED COMPLAINT

1   nature covered by the indemnity provision set forth in AEF's Memorandum and Articles of

2   Incorporation.

3         128.    Clause 200 of the Memorandum and Articles of Association of AEF states that

4   "every Director, agent or officer of the Company" will *not* be indemnified for "any loss or

5   damage in carrying out his functions" if the liability arises through "fraud or willful deceit."

6         129.    Lastly, Plaintiffs request a preliminary and permanent injunction preventing AEF,

7   Molner, and Director Defendants from withholding distributions to Plaintiffs.

8

### FIFTH CAUSE OF ACTION

9

**(Breach of Fiduciary Duty Against the
Director Defendants, Aramid Capital and Molner)**

10

11         130.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

12         131.    The Director Defendants owe fiduciary duties to Plaintiffs.

13         132.    Aramid Capital owns all of the voting stock of AEF, and is a controlling

14   shareholder. As a controlling shareholder, it owes fiduciary duties to Plaintiffs.

15         133.    As the chairman and controlling person of Aramid Capital, a class A shareholder,

16   Molner owes fiduciary duties to Plaintiffs.

17         134.    The Director Defendants, Molner and Aramid Capital have breached their

18   fiduciary duties by conducting or acquiescing to insider transactions harmful to Plaintiffs while

19   concealing the nature of those transactions and not pursuing the collection of the loans made

20   pursuant to those transactions.

21         135.    The Director Defendants, Molner and Aramid Capital have breached their

22   fiduciary duties to Plaintiffs by presenting misleading information concerning the value of AEF's

23   loan portfolio.

24         136.    The Director Defendants, Molner and Aramid Capital have breached their

25   fiduciary duties by using AEF's assets and causing AEF to enter into transactions for personal

26   gain to the detriment of Plaintiffs.

27         137.    The breaches of fiduciary duty on the part of the Director Defendants, Molner and

28   Aramid Capital have caused Plaintiffs significant pecuniary harm.

21

138.    Director Defendants, Molner and Aramid Capital have acted with fraud, malice or oppression entitling Plaintiffs to an award of punitive damages.

139.    Accordingly, the Plaintiffs seek damages incurred due to the actions of the Director Defendants, Molner and Aramid Capital in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**(Aiding and Abetting Breach of Fiduciary Duty Against Molner, Levy, Adamek, Future Capital, Aramid Capital and SCI)**

140.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

141.    Molner, as chairman and controlling person of Aramid Capital (the Technical Services Provider and a Class A shareholder) and the beneficial owner of Aramid Capital shares in AEF, knew of the directors' fiduciary duties to AEF's shareholders, including Plaintiffs, and encouraged and substantially assisted in the breach of those duties.

142.    Molner exerted control over the Director Defendants and caused them to conduct or acquiesce in insider transactions harmful to AEF's shareholders that benefited Molner and entities controlled by him.

143.    Molner encouraged and assisted the Directors Defendants in making a loan to his entity SCI and in writing off that loan and failing to pursue its collection.

144.    Molner, as chairman of Aramid Capital, has held himself out as representing AEF in connection with communications with AEF's investors. Molner, for himself and for Aramid Capital, actively assisted the directors in breaching their fiduciary duties.

145.    Molner also controls SCI. SCI, at the direction of Molner, aided and abetted the Defendants' breaches of their fiduciary duties by actively participating in schemes by Molner and Levy to use AEF's assets to fund SCI's activities that SCI knew or should have known were improper.

146.    SCI, under Molner's control, aided and abetted the Defendants in pursuing an involuntary petition on a claim with little chance of recovery and significant risk to AEF and its constituents, in breach of the Defendants' fiduciary duties.

22

AMENDED COMPLAINT

1    147.    Levy aided and abetted the Defendants' breaches of their fiduciary duties by

2    causing AEF to enter into below-market loans that were beneficial to Levy and other insiders and

3    detrimental to AEF and its shareholders.

4    148.    Future Capital, under Levy's control, aided and abetted the Defendants' breaches

5    of their fiduciary duties by actively participating in schemes by Molner and Levy to use AEF's

6    assets to reap large fees and other rewards for Future Capital to the detriment of AEF and its

7    shareholders.

8    149.    Adamek, as former chairman of Aramid Capital and as the controlling person of

9    Stonehenge, aided and abetted the Defendants' breaches of their fiduciary duty by actively

10    participating in schemes by Molner and Levy to use AEF to conduct insider loans that were

11    detrimental to AEF and its shareholders.

12    150.    Defendants have acted with fraud, malice or oppression entitling Plaintiffs to an

13    award of punitive damages.

14    151.    Accordingly, Plaintiffs seek damages incurred for such conduct, in an amount to

15    be determined at trial.

16    **SEVENTH CAUSE OF ACTION**

17    **(Fraud Against Aramid Capital and Molner)**

18    152.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

19    153.    As further described in this Complaint, Defendants took actions to conceal the fact

20    that AEF would not be able to meet its business purpose as stated in the Offering Memorandum,

21    and took actions to conceal the fact that AEF would make loans to insiders on terms that were not

22    arms-length and fair to AEF.

23    154.    As further described in this Complaint, Defendants took actions to conceal the

24    nature, extent and consequences of the insider transactions and the value of the loan portfolio

25    from Plaintiffs and other shareholders.

26    155.    In doing so, Defendants made untrue statements of material fact and omitted to

27    state material facts necessary in order to make the statements not misleading in light of the

28    circumstances under which they were made.

23

AMENDED COMPLAINT

156.    Defendants made these statements with knowledge of their falsity, with knowledge that facts omitted were material, and with reckless disregard as to their falsity.

157.    Defendants made these statements with the intent that Plaintiffs would rely on them to their detriment and Plaintiffs did justifiably rely on them in 1) making their initial investments in AEF and 2) not exercising their rights to redemptions before Defendants suspended the redemptions altogether.

158.    Because Plaintiffs were misled, AEF continued to lose value to the insiders and Plaintiffs' investments were unjustifiably harmed.

159.    As a result of the fraud of the Defendants, Plaintiffs have suffered damages.

160.    Defendants have acted with fraud, malice or oppression entitling Plaintiffs to an award of punitive damages.

161.    Accordingly, Plaintiffs seek damages from Defendants.

### EIGHTH CAUSE OF ACTION

**(Unjust Enrichment Against Aramid Capital,
Molner, SCI, Levy, Future Capital, Adamek and Stonehenge)**

162.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

163.    Aramid Capital, Molner, SCI, Levy, Future Capital, Adamek and Stonehenge (the "Unjust Enrichment Defendants") have had and continues to have a benefit conferred on them through the insider transactions in which they wrongfully engaged to the detriment of AEF and its shareholders.

164.    The above Defendants are aware that they have received such benefits.

165.    It would be unjust to allow the above Defendants to retain the monetary benefits that they have realized through their wrongful conduct, as set forth above.

166.    Accordingly, Plaintiffs seek damages from the above Defendants in an amount by which those Defendants have been unjustly enriched.

24

AMENDED COMPLAINT

### NINTH CAUSE OF ACTION

**(Preliminary and Permanent Injunction
Against Molner and the Director Defendants)**

167.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

168.    Molner continues to control AEF's assets and there is a substantial likelihood that without injunctive relief from this Court, Molner will dissipate AEF's assets for less than reasonably equivalent value.

169.    Molner and the Director Defendants (through their participation and/or acquiescence) have caused substantial harm to AEF and its shareholders by conducting insider transactions, and have failed and refused, upon request, to act in accordance with the Offering Memorandum and in the best interests of AEF and its shareholders.

170.    Defendants have also refused, upon request of the shareholders, to relinquish control of AEF and will continue to do substantial harm to AEF and its shareholders if they are allowed to continue their control over AEF's assets.

171.    Accordingly, Plaintiffs request a preliminary and permanent injunction, preventing Defendants from selling, encumbering, wasting or otherwise transferring AEF's assets and preventing Defendants from entering into any transactions on behalf of AEF with any director or controlling party of AEF or Aramid Capital or any affiliate of any director or controlling party.

172.    Plaintiffs also request a preliminary and permanent injunction preventing AEF from paying the legal fees for Molner and Director Defendants because the causes of action stated herein are not of the nature covered by the indemnity provision set forth in AEF's Memorandum and Articles of Incorporation.

173.    Clause 200 of the Memorandum and Articles of Association of AEF states that "every Director, agent or officer of the Company" will *not* be indemnified for "any loss or damage in carrying out his functions" if the liability arises through "fraud or willful deceit."

174.    Lastly, Plaintiffs request a preliminary and permanent injunction preventing AEF, Molner, and Director Defendants from withholding distributions to Plaintiffs.

AMENDED COMPLAINT

## TENTH CAUSE OF ACTION

### (Accounting On Behalf of AEF)

175.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

176.    Under the terms of the Offering Memorandum and Memorandum and Articles of Incorporation, Plaintiffs are entitled to a proper accounting of AEF's books and records.

177.    These memoranda also state that AEF Directors shall manage all aspects of the business and have the burden to provide open access to the entity's books and records and "such information and explanation as may be necessary" for auditors to perform their duties.

178.    Defendants have failed to meet this burden by refusing to allow Ernst & Young to complete their 2009 audit—and by intentionally misleading a number of professionals so they would issue inaccurate reports inflating the value of AEF's assets.

179.    Since the fund's inception, Defendants, as fiduciaries of AEF, have utterly failed to produce financial records for the venture, whereby forcing Plaintiffs to seek Court relief to demonstrate the full extent of Defendants' wrongdoing.

180.    Plaintiffs and other AEF investors have repeatedly rejected prior "accountings" as inaccurate, inflated, and the results of Molner and Director Defendants further perpetration of fraud.

181.    As alleged throughout this Complaint, Plaintiffs—as investors in the fund—are owed their share of the balance of Defendants' wasteful and unauthorized spending—and misappropriation—of AEF funds.

182.    The full extent of Defendants' misappropriation and waste of AEF's property, assets, and money can only be determined through a comprehensive, independent accounting of AEF's books and records.

## ELEVENTH CAUSE OF ACTION

### (Appointment of Receiver)

183.    Plaintiffs repeat and reallege all of the allegations contained in this Complaint.

184.    Molner and Director Defendants have siphoned millions of dollars and equitable interests from AEF for their personal use and gain—always to the detriment of AEF shareholder

26

AMENDED COMPLAINT

and in most cases outside of the investment parameters set forth in AEF's Articles and Memorandum of Incorporation.

185.    Plaintiffs and other AEF shareholders repeatedly have sought transparency and a full review of AEF's books and records to uncover the full extent of Defendants' misconduct. Defendants have refused to allow such an investigation.

186.    Plaintiffs and other AEF shareholders repeatedly have tried to remove Molner and Director Defendants from controlling the fund, but they refuse to cede their power and control.

187.    Without this Court's intervention, Molner and Director Defendants will continue to fraudulently conduct business with AEF shareholder funds and hide evidence of the extensive self-dealing that has already occurred.

188.    Plaintiffs' remaining interest in AEF is in immediate danger of being removed and injured by Molner and Director Defendants.

189.    Pursuant to Cal. Code Civ. Proc. § 564, and the Court's inherent authority, Plaintiffs seek the appointment of a receiver to prevent any AEF assets from being encumbered, sold, transferred, or managed in any form by Molner and Director Defendants.

190.    The appointment of a receiver is necessary to preserve the property of Plaintiffs' interest in AEF—and all other AEF investors' interests as well.

## PRAYER FOR RELIEF

191.    WHEREFORE, the Plaintiffs respectfully seek Judgment:

192.    Awarding damages against the Defendants as the court determines are due and owing, but in an amount not less than $60 million;

193.    Granting a preliminary and permanent injunction preventing Molner and the Defendants from transferring or selling assets and conducting transactions business on behalf of AEF;

194.    Granting a preliminary and permanent injunction preventing Molner and the Defendants from using AEF investors' funds to defend themselves in this lawsuit;

195.    Granting a preliminary and permanent injunction preventing Molner and Defendants from withholding distributions from Plaintiffs.

27

AMENDED COMPLAINT

196.    Awarding punitive and exemplary relief sufficient to punish defendants and deter such conduct;

197.    Awarding costs and attorneys fees;

198.    Appointment of a receiver to take immediate control of all AEF assets and manage all transactions; and

199.    Awarding such other relief as is fair and equitable, including an accounting of AEF's books and records.

Dated:    July 22, 2011

DANIEL M. PETROCELLI
JAMES PEARL
JOSEPH SCOTT MANSON
O'MELVENY & MYERS LLP

By: _____
James Pearl

Attorneys for Plaintiffs Wimbledon Financing Master Fund, Ltd.; Stillwater Market Neutral Fund III SPC

28

AMENDED COMPLAINT